And perhaps you can start off by telling us what the differences are so that we don't repeat ourselves. Good morning, Your Honors. May it please the Court, Sharon Lee on behalf of Pellett Blackberry. So as Your Honor mentioned, these two cases are on the issues that are unique to this case. And then I'll also touch on the arguments with respect to the email-centric interface, which wasn't really discussed in the previous argument. So starting with dependent claims. Is that Claim 8? So dependent claims 8 and 19 are also issues that are unique to the 1146 proceeding. The email-centric interface argument that I was referring to is dependent claims. So I'll start with Claims 8 and 19, which require an interface element that identifies a wireless networking function in the expanded dynamic bar. The Board did not provide any explanation for why a person of orny skill in the art would have added a wireless networking function, which is a system-level configuration option, to Cadiz's application-level person window 825, which we know provides contact availability information, or email window 1020, which provides a list of received email messages. It makes no sense to include a wireless networking function to either Cadiz's person window or email window, and there's no motivation for doing so other than using the 466 patent as a roadmap. The Board did make a finding that a user, a person of orny skill in the art, would have been motivated to modify Cadiz's person window and email window so that a user could turn on and off Cadiz's notifications related to the additional dynamic preview information displayed in the Cadiz's person window and email window. So there are other issues with that finding, but even if we take that finding as true, that does not explain why a notification regarding wireless networking function, which is unrelated to the information in the person window and the email window, into those windows. And there's no evidence to support that. Is your argument predicated on me accepting your view that the quick settings menu operates at the system level as opposed to as a user-level application level? So that is a one layer of the argument. No, but does your whole argument predicated on me accepting that? Can you prevail on that argument if I don't agree with you that it's limited to the system level? Yes, Your Honor. With respect to claims 8 and 19, those claims specifically require this wireless networking function. So even if you reject the fact that Theda Likowski discloses system-level configuration options, the wireless network function has no relationship to the information in the person window and the email window. But that's the finding that the board made. The board said that there would be a motivation to modify the person window and email window only for notifications related to that information. Wireless networking function, I don't think there's any dispute, is unrelated to the information in those windows. But turning to the references suggest that a person with a skill in the art would actually would not have been motivated to include wireless networking functions such as that disclosed in Theda Likowski in the person window or email window because both Cadiz and Theda Likowski put these types of configuration options at the topmost level. So Cadiz discloses that its system-level configurations are in its top-level sidebar and similarly Theda Likowski discloses that its configurations are placed at the top-level taskbar. Theda Likowski calls it a quick settings menu because you can quickly access it from that quick access icon on the top-level taskbar. By putting it and burying it down into the person and email window as Google proposes, you're taking away the benefits of being able to quickly access those configuration options. So Google allegedly argues that this modification allows for quickly, efficiently, and conveniently changing the settings, but all those benefits that Theda Likowski talks about are done away with by moving the configuration options for the system level down to the person window or email window. So with respect to dependent claims 7, 9, 18, and 25, it's similar. 7, 9, 18, and 25 do not require that the specific interface element be a wireless networking function, but they do require that there be an interface element in the expanded bar and the board erroneously accepted Google's attorney argument that a person-learning skill in the art would have been motivated to include Theda Likowski's quote special notification in Cadiz's person window or email window to reject BlackBerry's argument that Google failed to show why a person-learning skill would have been motivated to add Theda Likowski's disclosed system-level quick access settings to Cadiz's application-level person window and or safety and or courtesy. So are you saying there was no evidentiary support from that? There was no expert testimony to suggest it? There's, that's correct your honor. The Google's expert gave a conclusory statement that it would be for safety and courtesy, but there was no explanation about why it would provide safety or courtesy, particularly when you're moving those configuration options down into the person window or email window. So now you have overstated something. You said there's no evidence and I said didn't they have an expert who said it and you said no and then you went and you said it's only attorney argument. None of that is true. They did have an expert which you've now admitted that said it, now you're just telling me he didn't explain his rationale behind it. So both of you need to work on being more precise when you represent things to the court. I apologize your honor. What I intended to convey was that Google's expert merely states in conclusory fashion that safety and convenience would provide the motivations, but there is no explanation for that. Those are just generic motivations, particularly when we're moving the elements from the top level bar down to a deeper level into the notifications, but whether or not Steve Lukowski has special notifications for particular contacts is irrelevant to what Steve Lukowski discloses in that quick settings menu that Google relies on for its proposed modification, because even if there are separate notifications for different contacts, what that quick settings menu does is actually turns on and off those It says that the notifications may be efficiently switched between on or off, including for special notifications. So the efficiency comes from being able to turn all of those on and off at the same time. There are no other questions. I'll move on to the email-centric interface argument with respect to the independent claims, and this is an example of the board accepting attorney argument over the evidence, and I just want to note for the court, and we noted this in a footnote in our brief, but dependent claims 2, 3, 13, 15, and 23 are impacted by the decision regarding the email-centric interface because the board's decision relies solely on the email-centric interface for those claims. The board's obviousness decision here is based on accepting Google's attorney argument that both of Cadiz's disclosed implementations of the email window include only a subset of the email functionality, but that's purely attorney argument. There's no support for this position. Cadiz itself explains that there are two alternate ways that the email window can be implemented. Either provide an email specific viewer having the desired email functionality, or have a viewer that instantiates an instance of the user's email program, and we have expert testimony from both parties that explain that the second implementation is an implementation of the fully functioning email application, and that makes sense because there must be some difference between the two alternatives that are being disclosed by Cadiz, and the expert testimony on that is Appendix 4563, Paragraph 75, and also Appendix 778 to 779, Paragraph 94. Now there's no evidence regarding why a person with an ASCII only art would have been motivated to make Google's proposed modification when Cadiz already discloses invoking the full email application off of the sidebar, which would take fewer steps. And the board erred by failing to address BlackBerry's argument that Google's proposed modification eliminates all of the benefit and functionality of an email window having just the desired functionality. There's no reason to make that modification when Cadiz says to instead alternately invoke the full email application from the sidebar. If there are no other questions, I'll reserve the rest of my time. Good morning, Your Honors, again. So Judge Post, I'll start with the question you asked, sort of what is unique in the 1146 appeal, and it is the Sidelakowski issues are the unique issues, so that's where I'd like to start. So if we look at the board's findings with respect to the Sidelakowski issues, they are more than supported by substantial evidence, and this court should affirm. So if we start with claims 7, 9, 18, and 25, if we look at the board's decision, the board adopted Google's reasoning and found that a person of ordinary skill would have been motivated, would have reason to modify Cadiz's person window 825 and email window 1020 to include an interface for notifications, power, and radio. And if you look at the underlying evidence, there was testimony here. Are you talking about, tell me about the board, is this board at 48, 49? Is that the 47th? So Your Honor, this would be in the board's decision in the 466, so appendix, we can start at appendix A49, appendix page 49. I just want to make sure. No problem, Your Honor. So if you look at, starting with page 49, that's where the board addressed the arguments of the party with respect to these claims. And again, if you look at appendix 49, for example, itself, the board explained Google's position here, which was supported by testimony from Dr. Olson, that one of ordinary skill would have been motivated, would have reason to use Cadiz's interfaces to apply configuration options, such as the ones in Sadlowski, for reasons of, and I, this is again, I'm quoting here, that you would have improved convenience and usability of Cadiz's device. And then on appendix 50, Your Honor, the board basically says it adopts the petitioner showing as its own. That's right above the patent on its contentious. How would you have improved convenience? How? So Your Honor, the way you would have improved convenience is that you would have... It seems to be a lot less convenient to me once you actually do this, because then you're going to require the users to drill all the way down into the personal window or email window to change the wireless network functionality. So actually, I understand your expert said that, but he didn't explain why, and to me when I read it, it's the opposite. So Your Honor, let me explain why, which is that our expert, and I think what the finding the board made here was, it's not limited to having a setting at the system level, but you would also have a setting at the application level. So if you look at appendix page 52... That's why I started with, by asking her that question, are you limited? Because I think that if you were limited, you'd have a really hard case for me if you were limited to the system level. Your Honor, that could be, but obviously here the alternative factual finding, and that's on page 52. So we do believe, and you know, they make a lot of hay about this system level notification versus at the application level. I think, again, the board made a factual finding there. The board did not credit their expert testimony on this issue, whether or not the special notifications in Sadlowski are at the application level versus the system level. And again, that's the purview of the board, and substantial evidence supports the board's decision with respect to claims 7, 9, 18, and 25. Now if we turn to claims 9 and, or sorry, not 9, claims 8 and 19. So Judge Prost, now I'm on page 850 of the board's decision. Again, there, the board considered all the arguments and evidence presented by both the parties. The board simply agreed with Google's positions and the evidence it provided. As a preliminary matter, I'll note Blackberry's actually made a lot of new arguments on appeal with respect to claims 8 and 19 that it never made before the board. But even if you leave that aside, there was again more than substantial evidence here that supports the board's findings with respect to claims 8 and 19. So as a reminder, these claims deal with the option of providing wireless networking to turn that on or off. And what Dr. Olson, Google's expert, testified that you would actually have a reason to provide an option in Cadiz, Cadiz's interfaces, for basically a configuration option that would allow you to turn the wireless networking on or off for reasons of safety and courtesy, example when you're on an airplane. And Sadlowski actually tells us that. So this came directly from the references and is supported by the testimony of Google's expert. Again, there's more than substantial evidence that supports the claims 8 and 19. Unless there are any questions on those those claims, I'll quickly address the email-centric issue, which actually applies to both of the proceedings. And I had to address that already briefly. I'll just make a couple of minor points. I heard counsel say that the paragraph 72 is the one in question here of Cadiz should only be read in one way. Again, the board looked at the evidence, it looked at the language of Cadiz, it looked at the expert testimony from both experts on that point, and it agreed with Google's evidence and arguments saying Cadiz does only disclose a limited email functionality, so there would have been reason to modify the references here as proposed by Google. Again, the board's decision is more than supported by substantial evidence. And the board even looked at their expert testimony, which again, I did not hear anything about their expert testimony, but their only limited functionality with respect to email window 1020, and then their expert also admitted on A4275-76 that when you have an instance of an application, it doesn't necessarily give you the full features of that application. So unless there are any other questions, we request that the panel be adjourned. I just wanted to quickly address a couple of points, Your Honors. With respect to the dependent claims, and particularly the wireless networking function, Google argues that because Vita Likowsky says that changing the wireless networking function would provide safety and courtesy, for example, on an airplane, that provides sufficient motivation to include the wireless networking function in Cadiz. But the claim requires that the wireless networking function be in the expanded dynamic bar. That's why Google had to argue and the board had to find that it would have been obvious to include the wireless networking function in those particular windows, and there's no particular windows, as opposed to putting it where the references say that they should go, why a person with a learning skill in the art would have been motivated to that, and how that would promote safety and courtesy. Turning to the email-centric interface, Google's counsel mentioned that BlackBerry's expert admitted that the email window 1020 only includes a subset of the functionality, and that's true. But that's because email 1020 is only representative of the first implementation that Cadiz tells us about. Cadiz also tells us that there's an alternate implementation of the email window, and that implementation is, as both experts agree, the fully functioning email application. So in view of that, there's no evidence in the record about why a person with a learning skill in the art would have been motivated to make Google's proposed modification when Cadiz already discloses invoking the full email software application directly from the sidebar, which would provide a better user experience. Are there any other questions? Thank you.